HUNTRESS, guardian, *v.* PORTWOOD *et al.*

1. A judgment of the Supreme Court reversing one rendered by a trial court in
a claim case, whereby it was adjudicated that the property levied on was not
subject, does not, either actually or in effect, adjudicate between the parties
that the property is subject, when the judgment of reversal is based ex-
clusively upon the ground that a single ruling of the trial judge on a legal
question which was not decisive of the entire case was erroneous.
2. An order allowing the withdrawal of a claim is, unless set aside, binding and
conclusive upon the parties to the case ; and if, in pursuance of such order,
the claim be in fact withdrawn, it can not be correctly said that there has
been an adjudication of the same upon its merits.
3. Where the owner of an irregularly shaped tract of land embracing approxi-
mately 307 1/2 acres undertakes to convey a portion thereof by executing an
instrument in the form of a deed which designates such portion as a parcel of
land "containing two hundred acres, more or less," but does not with suffi-
cient definiteness set forth or indicate how it shall be cut off from the entire
tract, or otherwise describe such portion so that its identity can be ascertained
without resort to extrinsic proof as to the secret and undisclosed intention of
the maker with regard thereto, no title to any part of such tract of land passes
to the person named in the instrument as grantee.   SIMMONS, C. J., dissent-
ing.

Submitted May 1, — Decided August 9, 1902.

Equitable petition.   Before F. H. Colley, judge pro hac vice.
Taliaferro superior court.   January 24, 1902.

*A. H. Davis* and *W. O. Mitchell,* for Huntress, guardian.

*Samuel H. Sibley* and *Hawes Cloud,* contra.

LUMPKIN, P. J.   This case was here at the March term, 1901, when a judgment of the superior court of Taliaferro county, denying an interlocutory injunction to Portwood and Anderson, who were then the plaintiffs in error, was affirmed.   See 113 *Ga.* 815. The general nature of the case being disclosed by the statement of facts embraced in the opinion then filed, it is unnecessary to here repeat the same.   At the August term, 1901, of the court below, after the plaintiffs' pleadings had been so amended as to eliminate all issues save those in controversy between themselves and C. W. Huntress, as guardian of Ellen Huntress, the case came on for trial before a jury, and a verdict was returned in favor of the plaintiffs.   Huntress, as guardian, made a motion for a new trial, to the overruling of which he excepted.   Portwood and Anderson thereupon filed a cross-bill of exceptions.   As the case is absolutely controlled adversely to the defendant below by the rulings announced in the headnotes, we shall discuss only those grounds of his motion for a new trial to which these rulings relate, the other grounds thereof being, for the reason just indicated, wholly immaterial, as are also the questions raised by the cross-bill of exceptions.

1, 2.   The defendant offered at the trial certain documentary evidence, consisting of certified transcripts from the records of this court and of the court below, for the purpose of showing that it had been adjudicated that the portion of the land in controversy to which Anderson was setting up title was subject to the execution held by Huntress as guardian; and, in this connection, his counsel offered to prove that this alleged adjudication was also binding upon Portwood because of an agreement on his part to abide by the judgment rendered in the claim case of Anderson.   If these documents had been introduced, they would merely have shown, (1) that at the February term, 1899, of the superior court of Taliaferro county, that case had been submitted to the presiding judge upon an agreed statement of facts; (2) that he rendered a · judgment holding the land not subject, basing his decision upon the ground that a deed made by the head of a family and purporting to convey property which had been set apart as a homestead under the constitution of 1868 did not, if executed while the homestead estate was still in existence, pass to the grantee any interest

whatever in any land embraced in the homestead; (3) that this decision was set aside by the Supreme Court, and its judgment was, by a proper order, made the judgment of the court below; and (4) that subsequently an order was passed allowing both Anderson and Portwood to withdraw the claims filed by them, which they accordingly did. Complaint is made of the rejection of this evidence. We are quite sure it was not admissible, for the reason that it would not, if admitted, have established the plea of res adjudicata interposed by the defendant. All that this court decided when the claim case of Anderson came before it was, that the trial judge ruled erroneously upon the legal question on which he based his judgment. See 110 *Ga.* 427. Neither this court nor the superior court of Taliaferro county undertook to pass upon the sufficiency of the descriptive words employed in the deed under consideration. The effect, therefore, of the judgment rendered here was simply to leave the case open for another trial in the court below, with the legal question then presented for decision finally settled adversely to the claimant.

On the argument of the case as now presented, counsel for the defendant below relied upon the decision announced by this court in *Bradshaw* v. *Gormerly*, 54 *Ga.* 557. A casual examination of that case will, however, show that it has no bearing on the question under discussion. It there appears that a judgment of the superior court subjecting the property claimed was affirmed by this court, and thus the claim case was brought to a final termination. The effect of the judgment of affirmance was, therefore, to conclude the claimant not only as to all issues actually made and passed on in the lower court, but as to all issues which he might have raised therein. To the foregoing we may add that the documentary evidence upon which the defendant in this case relied showed that, in point of fact, Anderson's claim never went to final trial in the court below, but was voluntarily withdrawn by him; and therefore no adjudication in favor of Huntress, as guardian, has ever been rendered in that court. So far as appears, he assented to the withdrawal of that claim, thus leaving Anderson at liberty to renew it at any time he might choose, and thereby resist, upon any ground other than that as to which he was concluded by the above-mentioned decision of this court, the enforcement of the execution held by Huntress in his representative capacity. If the latter did not

in fact consent to this disposition of that case, but the court, over his protest, allowed the claim to be withdrawn, he should, if he considered himself in any way aggrieved by this action on the part of the court, have duly excepted thereto.

3. The main and controlling question now before us for determination is whether or not the instrument signed by Absalom G. Evans and his wife in 1882, purporting to be a deed from them to their son, R. O. Evans, was, as to description, sufficiently definite and certain to pass title to any portion of the land therein referred to. It appears that one of the makers, Absalom G. Evans, owned a tract of land containing $307\frac{1}{2}$ acres, more or less, which had been set apart as a homestead. A plat of the same, appearing in the record before us, discloses that this tract had many boundaries, and was quite irregular in shape. By the above-mentioned instrument Evans and his wife undertook to convey to their son a portion of this homestead estate, containing 200 acres, more or less. Subsequently the son signed and delivered to Huntress, as guardian, a paper purporting to be a mortgage covering all the interest of the former in the land. The execution issued upon a foreclosure of this paper is that which Huntress, as guardian, is now seeking to enforce. The descriptive words employed in the instrument which he relies on as a deed from Absalom G. Evans and his wife to R. O. Evans were as follows: "All that tract or parcel of land situated; lying and being in said State and county (Taliaferro), containing two hundred acres, more or less, bounded as follows: on north by land of E. I. Anderson; on east by lands of Daniel Evans, colored; on south by land of Addison Ogletree; on west land said Absalom G. Evans and Mary E. Evans." We are of the opinion that, in view of the facts above stated, this instrument passed nothing to R. O. Evans. Our reason for so holding is, that it does not identify any particular portion of the entire tract of $307\frac{1}{2}$ acres, more or less, owned by Absalom G. Evans. It is, of course, inferable that he and his wife intended to convey to their son, R. O. Evans, a parcel of land approximating in quantity 200 acres and constituting a portion of the homestead estate. The difficulty is, that they did not specify any boundary line, or lines, between the land they intended to convey and that which they intended to reserve. The words "on west" certainly can not be said to indicate a boundary line, or enable any one to locate such a line. It would not do

to say it was the purpose of Absalom G. Evans and his wife to cut off from the whole tract exactly two hundred acres, or that the portion they intended to convey can be ascertained and separated from the balance of the tract by running a line due north and south. It is obvious that a parcel of land containing about 200 acres and bounded on the "north by land of E. I. Anderson; on east by lands of Daniel Evans, colored; [and] on south by land of Addison Ogletree," might be cut off from the entire tract by running divers straight lines across it. With a given starting-point on either the northern or the southern boundary of this tract, it would be practicable to run a line cutting off precisely 200 acres. Without such a starting-point, even this could not be done; and given such a starting-point, the line drawn would necessarily vary according to the significance which different persons undertaking to run the line might attach to the words, "containing two hundred acres, more or less," appearing in the instrument under discussion. This description as to quantity might easily be understood as referring to a parcel of land embracing any number of acres from 175 to 225. Accordingly, we affirm, without doubt or misgiving, that no surveyor, however expert, could take the description contained in the instrument just mentioned and, by the aid of any proper extrinsic evidence, locate the precise body of land which the makers of that instrument intended to convey.

Even if they and R. O. Evans had agreed upon a dividing line and understood perfectly how the same should run, this would not suffice; for a deed must itself contain descriptive words with respect to its subject-matter, such as will enable a third person to apply the same to the locus in quo without resorting to any secret and undisclosed intention on the part of the parties thereto. Whilst a deed wanting in this essential is susceptible of reformation, so as to effectuate the unexpressed intention of the parties, it can not, without such reformation, stand as a muniment of title. If Absalom G. Evans and his wife actually agreed with R. O. Evans upon a boundary line cutting off from the entire tract the particular portion thereof they desired he should have, the instrument signed by them should itself have disclosed that such was the fact, and also have contained such a reference to this line as would enable third persons to find and locate it. No authority need be cited in support of the proposition that parol evidence is inadmissible to

add to or vary the terms of a deed, or other written instrument. Such evidence is admissible only for the purpose of applying language used in a deed to the subject-matter thereof. Where it can be gathered from the words employed in a deed that the intention of the grantor was to convey the whole of a tract of land owned by him, even a vague description of the same will suffice if, by the aid of competent parol evidence, its precise location is capable of ascertainment and its identity can thus be established.    See *Shore v. Miller*, 80 *Ga.* 93 ; *Beardsley* v. *Hilson*, 94 *Ga.* 51 (6); *Broach* v. *O'Neal*, Ibid. 475; *Derrick* v. *Sams*, 98 *Ga.* 397; *Elwell* v. *Mortgage Co.*, 101 *Ga.* 496.    The most extreme case on this line is that of *Shore* v. *Miller*.    The opinion delivered by Mr. Justice Blandford does not fully set forth the facts upon which the decision in that case was based.    An examination of the original record therein, which is of file in the office of the clerk of this court, discloses that the descriptive words employed in the deed then under consideration were : " All those tracts or parcels of land situate, lying & being in the 9th district of Hall county, known by the numbers (being parts of lots) 22 & 23, and containing one hundred and seventy-two acres, more or less."    This language warranted the inference that it was the intention of the maker of the deed to convey all of his interest in the lands embraced in lots known as numbers 22 and 23 in the 9th district of Hall county ; and it is clear that he did not claim to own all of the territory included in those land lots, or undertake to convey any portion thereof which did not belong to him.    It was recited in the motion for a new trial filed in that case that the party tendering this deed in evidence offered " to prove by parol testimony the identity of the land described in said deed as parts of lots Nos. 22 & 23 in the 9th district of Hall county, and that it was all of those lots owned and possessed by the [grantor] at the time he executed said deed."    That, then, was a case where the grantor undertook to convey one entire tract of land lying in one land lot, and another entire tract situated in a different land lot.

The present case is easily distinguishable from all of those just cited ; for, as we have endeavored to point out, the effort in this instance was to convey a part only of an entire tract of land owned by Absalom G. Evans, without sufficiently designating one of the essentially important boundaries of that part.    So it only remains.

to notice two cases, *Gress Lumber Co.* v. *Coody,* 94 *Ga.* 519, and *Vaughn* v. *Fitzgerald,* 112 *Ga.* 517, in which descriptions of parts of specified land lots were held to be sufficient. In the former of these cases the land sought to be conveyed was described as "one hundred and thirty-four acres of land on the north side of lot number one hundred and seventy-four in the twentieth district of Dodge county." In the other case the description dealt with was, " 65 acres of land of lot No. 37 in the 8th district of Wilcox county, price $5.00 per acre, being the west side." The land lots referred to in these cases were, by statute, square lots containing each a definite number of acres; and it was held that as the portions to be separated therefrom also consisted of a stated number of acres, it was possible to ascertain in each instance the precise fractional part referred to by drawing across the lot a straight line in such manner as to form a parallelogram containing the number of acres indicated. The decisions in these cases certainly go far enough in holding descriptions of this nature adequate. The Evans tract of land was not only not a square, but, as has been seen, was very irregular in shape; and besides, the proof showed that he claimed title, not to any specified number of acres as being embraced within the boundaries of this tract, but to 307½ acres, more or less. Furthermore, he and his wife did not undertake to cut off from the entire tract, as the portion thereof which they desired their son to have, precisely 200 acres, but a parcel of the same " containing two hundred acres, more or less."

It necessarily follows from what is said above that a verdict for the plaintiffs was demanded by the evidence, and there was no error in denying the defendant a new trial. This being so, we are not, as we have already intimated, called upon to pass on the merits of the questions presented by the cross-bill of exceptions sued out at the instance of Portwood and Anderson, in which complaint is made of certain interlocutory rulings by the trial judge which were adverse to them.

*Judgment on the main bill of exceptions affirmed; cross-bill of exceptions dismissed.*

*All the Justices concurring, except Lewis, J., absent, and*

SIMMONS, C. J., dissenting. 1. "The description of the property conveyed in a deed is sufficiently certain when it shows the intention of the grantor as to what property is conveyed, and makes

its identification practicable." *Andrews* v. *Murphy*, 12 *Ga.* 431. "If a surveyor, by applying the rules of surveying, can locate the land, the description is sufficient. A deed will be sustained if it is possible from the whole description to ascertain and identify the land intended to be conveyed." 2 Devlin on Deeds, § 1012 et seq. Accordingly, where the owner of an irregularly shaped tract of land containing 307 acres conveyed 200 acres, more or less, to a grantee, and bounded it on the north by land of A, on the east by land of B, on the south by land of C, and on the west by land of D (the grantor), the description is not, as matter of law, so vague and uncertain as to render the deed void.

(*a*) The deed conveys all the land from the point where the land of A touches the land of the grantor to the land of B, and thence to the land of C. The starting-point is either at the land of A or that of C. A line drawn from either of these points to the other point will show the line between the grantor and the grantee on the west.

(*b*) The fact that the deed calls for 200 acres, more or less, will make no difference. If the boundaries described in the deed take in the entire 307 acres, the whole will pass to the grantee. *Ray* v. *Pease*, 95 *Ga.* 153, 4 Am. & Eng. Enc. L. (2d ed.) 763.

(*c*) Such a deed having been properly recorded, and a mortgage given by the grantee to a third person to secure borrowed money also properly recorded, the sale by the administrator of the grantor of this land conveyed no title to the purchaser, and it was error in the court to refuse to grant a new trial.

2. Where a levy had been made by virtue of a mortgage fi. fa. and a claim filed, and the claimant in aid of his claim filed an equitable petition setting up his right of subrogation for reasons alleged in the petition, and on demurrer his equitable right was stricken, which was the only equity alleged, it was error, over objection of the plaintiff in fi. fa., to try this alleged equitable petition in preference to the claim case, although it was marked filed a day in advance of the claim case. Such a proceeding deprived the plaintiff in fi. fa. of his legal right to the opening and conclusion in the trial of the merits of the claim.