41349.   BOATRIGHT v. TYRE.

SUBMITTED JUNE 9, 1965—DECIDED SEPTEMBER 8, 1965.

T. J. Townsend, Sumner & Boatright, J. Laddie Boatright, for plaintiff in error.

Leon A. Wilson, II, contra.

BELL, Presiding Judge. ■ Special grounds 1, 2, and 3 of protestant's amended motion for new trial assign error upon the court's rulings refusing to admit into evidence three original recorded deeds which protestant offered as muniments of title to his tract of land bounding applicant's land on the north.

One of the deeds which were offered into evidence by protestant and rejected by the court described protestant's land as "Seventy-five (75) acres, more or less, of Lot of Land Number Sixteen (16) in the Fourth (4th) District and in the northwest corner of said Lot Number 16 of originally Pierce now Bacon County, Georgia, and bounded as follows: North by

original land line; east by the Blackshear and Baxley Road down to branch and thence west to original land line; west by original line."

In the other two deeds the descriptions of the land, so far as material to these grounds of the motion for new trial, were identical to the above description in all substantial respects.

The function of processioners is only to run and mark anew land lines which at some previous time were located and established. *Amos v. Parker,* 88 Ga. 754, 755 (16 SE 200); *Pearre v. Wilkerson,* 181 Ga. 619 (183 SE 626). In the trial of a protest to a return of processioners "the issue is solely as to the re-marking of the old line . . . The remedy afforded by the law of processioning assumes that each of the contending parties has title to his property, and is never employed to determine that one of them has and the other has not title," *Elkins v. Merritt,* 146 Ga. 647, 649 (92 SE 51).

As title is not in issue, deeds in a party's chain of title are not admissible into evidence for the particular purpose of proving title. Yet, in connection with the true issue deeds in a party's chain of title are admissible as bearing *upon the question of the identity and location of the boundary between the coterminous owners. Hill v. Snellings,* 41 Ga. App. 585 (1) (154 SE 156); *Boyd v. Hill,* 94 Ga. App. 686, 689 (96 SE2d 222).

This general principle, however, is inapplicable in the instant case. In all three deeds it appears from the description that the southern boundary of the tract runs from a point where the eastern boundary intersects a branch (unnamed) due west to the western boundary of Land Lot 16. The trouble with this description of the southern boundary is that unless it were shown by extrinsic evidence that the descriptive word "branch" could refer only to one certain branch traversing or contiguous upon the northwestern corner of Land Lot 16 then the description would be too vague and indefinite to indicate the location of this boundary and thus reflect light upon the issues in the case.

Therefore, in order to render the deeds admissible, it was necessary that protestant introduce preliminary evidence coupled with which the deeds would have identified definitely the

southern boundary of protestant's land. This the protestant failed to do. Without such preliminary evidence the three deeds were irrelevant, and the court did not err in refusing to allow them into evidence. *Code* § 38-201.

■ Special ground 4 complains that the court erred in rejecting several witnesses' testimony which protestant offered into evidence for the specific purpose of showing that two of the deeds considered in Division 1 of this opinion, which described the land as being in Pierce County, were intended to convey land in Bacon County and that in this respect the erroneous description was a mistake of the scrivener.[1]

It follows from Division 1 above that the evidence rejected according to this ground was irrelevant, as it was offered in support of other irrelevant evidence without tending to connect the latter with the issues in the case. This ground of the motion for new trial is without merit.

■ Ground 6 of the motion for new trial is based upon newly

---

[1]The land was described as being in Land Lot 16 in the 4th Land District of Pierce County, when in fact the particular part of the 4th Land District in which the land was located was no longer a part of Pierce County when the deeds in question were executed. However, the court was bound to take judicial notice that the portion of the 4th Land District where the land was located, which was at one time a part of Pierce County, was included in the formation of Bacon County from portions of Appling, Pierce and Ware counties July 27, 1914. *Stanford v. Bailey*, 122 Ga. 404 (50 SE 161); *McCaskill v. Stearns*, 138 Ga. 123 (74 SE 1032). Thus it was clearly apparent upon the face of the deeds that they were intended to convey land in Bacon County. "Where the descriptive terms of a deed are clear and unambiguous, the court will construe the terms, and parol evidence is not admissible to control the legal effect of such a description." *Tilley v. Malcolm*, 149 Ga. 514 (3) (101 SE 127). By the same token, if there were no repugnancy between the general and particular descriptions in the deeds so that the deeds clearly attempt to convey land in Pierce County, parol evidence still would be inadmissible to change the descriptions except in proper proceedings to have the deeds reformed.

discovered evidence. The evidence alleged in this ground consists of a conveyance in the form of a quitclaim deed to applicant from Powett Lott, who originally conveyed to applicant the tract of land the northern boundary of which is in dispute. In the earlier conveyance the land was described by naming adjoining landowners. In the later quitclaim deed, which appears to convey the same land or a portion of the same land, the land is described by courses and distances. The northern boundary of the tract as described in the later instrument is a straight line, rather than an irregular one as run by the processioners.

The newly discovered evidence is not necessarily irreconcilable with the line re-marked by the processioners. Even if it were, it would not justify the grant of a new trial in the instant case. What appears in a deed in a party's chain of title is not always indicative of those physical facts in accordance with which processioners must perform their duty of re-marking lines previously designated upon the earth's surface. Such instruments then may be inconsistent with the line re-marked, but not at all in a legal sense inconsistent with the result of the trial of a protest to a return of processioners.

"To justify a new trial, the newly discovered evidence must be such as would, on a new trial, likely produce a different result." *Alexander v. Allen*, 101 Ga. App. 706, 708 (115 SE2d 258). The trial court did not abuse its discretion in denying a new trial on this ground.

■ The applicant introduced into evidence his petition to processioners with all entries including the return of service of notice upon the protestant, the return of the processioners, and the surveyor's plat. This made out a prima facie case for the applicant. *Castleberry v. Parrish*, 135 Ga. 527, 528 (3) (69 SE 817); *Georgia Talc Co. v. Cohutta Talc Co.*, 140 Ga. 245, 247 (4) (78 SE 905); *Holden v. Harmon*, 37 Ga. App. 197 (139 SE 129); *Philpot v. Wells*, 69 Ga. App. 489, 492 (26 SE2d 155); *Edenfield v. Lanier*, 77 Ga. App. 535, 538 (48 SE2d 777); *Ray v. Dixon*, 106 Ga. App. 470, 473 (127 SE2d 309); *Wood v. Hamilton*, 109 Ga. App. 608, 610 (1) (137 SE2d 61).

Unless there was evidence in protestant's favor sufficient to

overcome the prima facie case thus established, the direction of a verdict for applicant was authorized. *Manning v. Roberson*, 68 Ga. App. 488, 489 (2) (23 SE2d 473). "In order for the direction of a verdict to be error, it must appear that there was some evidence which, with all reasonable deductions and inferences therefrom, construed in its light most favorable to the losing party, would support a different verdict." *Jones v. Mayor &c. of Athens*, 105 Ga. App. 86, 89 (123 SE2d 420).

J. S. Miles, one of the processioners, testified, "We had a deed and map. We didn't establish a line by that. We was re-establishing a line. We went down to this south corner to this west line, and we run back to so many feet. . . We set up a temporary stob. We went to this north end up here, to that corner, and come back; and I believe it was about eleven feet, the best I remember, that we lacked joining up. Well, we give then the benefit of the doubt to [protestant]. . ." Protestant argues that this testimony shows that the processioners acted arbitrarily and established a new line between the coterminous owners.

Of course, processioners cannot bring into existence lines which have not been theretofore designated on the surface of the earth or establish a line as shown merely in a deed or plat. *Amos v. Parker*, supra, at 755; *Smith v. Clemons*, 71 Ga. App. 589, 590 (31 SE2d 621).

However, the processioner's testimony, considered in context, does not invoke this principle. The processioner also testified: "Q. You moved over eleven feet more right there and found a blaze? A. Found a blaze. Q. And started right there? A. Yes. Q. In other words, that was the old line, then? A. I think so." This explanation vitiates the erroneous impression conveyed by that portion of the processioner's testimony lifted from context. Other testimony of this witness shows that in remarking the line the processioners followed a series of old blazes on trees from the western boundary of the tract to the head of a branch.

Protestant contends that the line as marked by the processioners should not be sustained, also, because they failed actually to trace and mark a portion of the line from the head of the branch to the point where the branch intersected the eastern

boundary line. The evidence shows that the processioners marked the head of the branch as a point on the northern boundary and accepted the run of the branch as the remainder of the line, instructing the surveyor so to draw the line on the plat.

"Nothing in the chapter of the Code on processioning makes any requirement respecting the placing of line or corner markers or requires that such markers be placed on any particular interval or spacing and nothing in the law as it presently exists requires that every foot or inch of a line be drawn on the face or surface of the earth, or that the processioners or a majority of them actually walk over or along the entire line without omitting any interval in so doing. All that is required of the processioners and the surveyor is that the lines be traced and marked anew so as to locate the lines with some definiteness." *Hackle v. Bowen,* 89 Ga. App. 799, 802 (81 SE2d 294).

If the run of the branch was in fact the old line, then the processioners would have done a vain thing had they attempted to mark this natural monument already so clearly evident upon the earth's surface. There is in the record no evidence to show that the processioners ignored other markings or that the run of the branch was not the old line.

The return of the processioners with the plat of the surveyor and the other evidence upon the trial of the protest show a substantial performance of the processioners' duties. In the absence of evidence to the contrary and in the absence of evidence showing that the line re-marked was not the true line, a verdict for the applicant was demanded.

The trial court did not err in denying protestant's motion for new trial upon the general grounds and special ground 5, which assigned error upon the court's direction of a verdict for applicant.

*Judgment affirmed. Frankum and Hall, JJ., concur.*