30619. HALL *et al. v.* BROWNING *et al.*

DECIDED OCTOBER 19, 1944. REHEARING DENIED NOVEMBER 10, 1944

*W. A. Dampier, M. H. Blackshear, W. B. Kent,* for plaintiffs.
*R. I. Stephens, Lester F. Watson,* for defendants.

GARDNER, J. 1. The duty of processioners appointed under authority of the Code, § 85-1605, is to survey and mark anew established lines as they actually exist, and not as they ought to have been laid out originally. *Amos* v. *Parker,* 88 *Ga.* 754 (16 S. E. 200); *Wheeler* v. *Thomas,* 139 *Ga.* 598 (77 S. E. 817); *Pearre* v. *Wilkinson,* 181 *Ga.* 619 (183 S. E. 626); *Cosby* v. *Reid,* 21 *Ga. App.* 604 (94 S. E. 824); *Aderhold* v. *Lambert,* 67 *Ga. App.* 166 (19 S. E. 2d, 538).

2. In processioning and marking anew established lines, the pro-

cessioners are bound by the rules which the law prescribes. These general principles are set out as follows: "Natural landmarks, being less liable to change, and not capable of counterfeit, shall be the most conclusive evidence; ancient or genuine landmarks such as corner station or marked trees, shall control the course and distances called for by the survey. If the corners are established, and the lines not marked, a straight line, as required by the plat, shall be run, but an established marked line, though crooked, shall not be overruled; courses and distances shall be resorted to in the absence of higher evidence." Code, § 85-1601. "General reputation in the neighborhood shall be evidence as to ancient landmarks of more than 30 years' standing; and acquiescence for seven years, by acts or declarations of adjoining landowners, shall establish a dividing line." § 85-1602. "Where actual possession has been had, under a claim of right, for more than seven years, such claim shall be respected, and the lines so marked as not to interfere with such possession." § 85-1603. We call attention to the many annotations in Ga. Code Ann., under the above-quoted sections.

3. The evidence demanded a finding that in the instant case the processioners did not follow the rules thus prescribed. There was abundant evidence that the existing lines were marked by fences, fence rows, hedges, hedge rows, trees, and other indications, which had been recognized and acquiesced in for many years—upwards of more than 30 years. The processioners, according to their own testimony, did not understand that it was their duty to mark anew the established line as thus indicated, but thought it was their duty to mark a line where the processioners thought it ought to be, rather than to locate and mark anew the existing line. One of the processioners testified: "In establishing this dividing line between them, we didn't recognize the division line that they had set up there among themselves." Another testified: "The new lines we run were all mighty close to the old lines that they had been observing for numbers of years, except in one or two places. . . When we got to the road or highway, the line ran off from the hedge row into the field between forty and seventy-five feet. . . We were trying to establish a line where we thought it ought to be, and not establish it where it was." Still another processioner testified: "I couldn't say whether any of these lines followed the old original land line that had been there forty years or longer,

In some places I think we did. A whole lot of that land was going through fields and briar patches. We followed the machine. We let it guide us the direction to go. We thought that was what it was for. . . It was our purpose to establish the lines as they originally were years ago, independent of any newly established lines. We wouldn't have had any use for a surveyor if we were going to follow the old line." It thus conclusively appears that the processioners, honest no doubt they were, in endeavoring to do what they conceived to be right and just as between their contending neighbors, nevertheless disregarded the principles of law in such cases made and provided.

4. The jury returned the following verdict: "We, the jury, decide in favor of the protestants." Thereupon the court passed the following judgment: "It is considered, ordered, and adjudged, that the old land lines in and around 165, 192, 194, 197, 224, in the 12th land district, Laurens County, Georgia, and all other land described in said application adjoining the land of said applicants, remain as they now exist; that the old landmarks, such as natural landmarks, genuine landmarks, corner stations, old fences and old fence row and other evidences effecting and marking the dividing land lines between the said protestants and the said Halls (applicants) be and it is ordered that they remain as they now exist, and not as shown by the plat and return of the said processioners and surveyor in said case." The judgment followed the allegations of the protest. The allegations of the protest in general terms as followed in the judgment set forth no plat or survey showing accurately and specifically by metes and bounds or other specific indicia, the line as it existed before the processioning was procured. It is not difficult to conclude that the effect of the verdict and decree was to leave the location of the existing line as mentioned in the decree, where it was before the processioning was had, but there is nothing in the evidence, verdict, or decree to locate this line as between the coterminous landowners. In such a proceeding the jury may find in favor of the line as found and returned by the processioners, if supported by evidence. If the evidence demands a finding that such line thus found and certified and returned by the processioners is not the correct line, they may find against the return of the processioners. A verdict finding against the return of the processioners, and where the evidence is not suffi-

ciently specific and definite and certain to establish some other line, the issue as to the dividing line stands as though the pro-cessioning had never been procured. *Russell* v. *King,* 180 *Ga.* 271 (178 S. E. 706). However, if the evidence in favor of the protest is specific and sufficiently definite to establish a dividing line between the parties other than the line as found, surveyed, and certified by the processioners, then in such event the line as defined in the protest, supported by evidence, may by a judgment of the court be set up and established as a true dividing line. *Reynolds* v. *Kinsey,* 50 *Ga. App.* 385 (4) (178 S E. 200). In the instant case the allegations of the protest and the verdict of the jury and the judgment of the court based thereon, are not in law suffi-ciently definite and specific to establish a line. The effect of the verdict and judgment was merely a finding and decree against the line located and certified by the processioners. It therefore follows that the line as it existed before the processioning proceedings in the instant case is still the dividing line wherever it may be, and stands as such and as though there had been no processioning pro-ceedings. *Russell* v. *King,* supra.

5. Since the evidence demanded a finding against the return of the processioners, the special assignments of error to the effect: (1) Concerning the notice; (2) concerning the verdict being un-authorized; (3) the vagueness of the protest and the failure to show a true dividing line other than the one found by the pro-cessioners; (4) the voidness of the judgment based thereon; (5, 6) concerning the failure of the trial court to charge—are all with-out merit and rest upon the issues covered in the other divisions of this opinion.

In view of what we have said, there is no assignment of error in the record sufficient to sustain a reversal.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*