31332. GEORGIA MARBLE COMPANY *v.* VOYLES.

DECIDED SEPTEMBER 5, 1946. REHEARING DENIED OCTOBER 3, 25, 1946.

*Roscoe Pickett,* for plaintiff in error.

*Hugh Dorsey Sosebee, Joseph G. Collins,* contra.

PARKER, J.   This case is a protest filed by Georgia Marble Company to processioning proceedings instituted by Julius M. Voyles, under the Code, Chapter 85-16, to have the dividing line between his lands and lands of the protestant surveyed and marked anew. The jury returned a verdict in favor of the line established by the processioners, and against the protestant, who filed a motion for a new trial which was overruled.   The case is here on exceptions to that ruling.

The only ground of the amended motion for new trial, other than the three general grounds, complains of the ruling of the court excluding certain testimony of a witness, a surveyor, for the protestant, as follows:   "That he surveyed the line in dispute during the year 1938, accompanied by W. P. Bailey, a former owner of adjoining lands, and predecessor in title to the applicant, Julius M. Voyles, and who at that time claimed to know by reputation in the community the location of the line dividing the lands of the parties hereto, now in dispute, and that he had known same for many years, and that the line in question dividing the lands of the applicant, and the protestant on lot No. 488, in the 4th District and 1st Section of Dawson County, Georgia, began at a conditional rock corner on the original north boundary of said lot near an old stable, and (walking down through said lot to the south boundary thereof) pointed out a large dark grey rock on the original east and west line of said lot, 585 feet from the southeast corner of said lot, as the terminus of said dividing line; being the same line as shown by the plat attached to the protest filed by the Georgia Marble Company, protestant in the case."   The witness also testified that the said W. P. Bailey is now deceased.

From a discussion between the court and counsel for the parties, which is included in the record as a part of this ground, it appears that the court ruled out the statements made by W. P. Bailey to the witness because they were declarations made by him after the title had passed out of him under the rule stated in the Code, § 38-407.   It appears also from the colloquy between the court and counsel that the attorney for the plaintiff in error admitted that

unless W. P. Bailey was the owner in possession at the time the statements were made by him they should be ruled out. "While one is the owner of land, what he says and does in respect to fixing the boundary thereof may be proved, and his agreements in respect thereto will bind subsequent purchasers from him; but after an owner of land has parted with his title, his subsequent sayings and acts can not be proved to bind his prior grantee or one holding under him." *Marion* v. *Hoyt*, 72 Ga. 117. See also *McCrea* v. *Georgia Power Co.*, 179 Ga. 1, 11 (2) (174 S. E. 798).

We do not think that the testimony excluded was admissible as traditionary evidence under the Code, § 38-313, and under the rulings in *Deaton* v. *Swanson*, 196 Ga. 833 (28 S. E. 2d, 126), and other similar cases relied on by the plaintiff in error. The testimony offered included statements of a deceased person which were construed by the court as declarations of a privy in estate made after the title had passed out of him, and, as stated above, counsel for the plaintiff in error acquiesced in this construction of the evidence when he admitted that unless the person making the declarations was the owner in possession at the time they were made the evidence should be ruled out. The court did not err in ruling out the testimony as complained of in this ground of the motion for new trial.

■ Under the general grounds of the motion for new trial it is contended that the verdict was contrary to the evidence, and was without evidence to support it, because the processioners ran a new line instead of marking anew the old line between the lands of the applicant and lands of the protestant. It is the plain duty of processioners to survey and trace and mark anew existing land lines, that is, old lines already established; and they have no right, power or authority to make or fix new dividing lines between adjoining landowners. Code, § 85-1605. This rule of law has been announced over and over again by the courts of this State. See *Davis* v. *Terrell*, 70 Ga. App. 478 (4) (28 S. E. 2d, 590), *Smith* v. *Clemons*, 71 Ga. App. 589 (31 S. E. 2d, 621), and *Hall* v. *Browning*, 71 Ga. App. 694 (32 S. E. 2d, 126), and citations.

We think a new trial should have been granted on the general grounds of the motion. It appears from the evidence that the processioners arbitrarily ran a straight line from an agreed starting point 22-1/2 degrees west of south, and that the line so run was a

new line although it was quite probably close by the old line. The evidence which we think authorizes this conclusion may be summarized as follows:

N. J. Cash, the county surveyor, testified: "I am the official surveyor of Dawson County, Georgia, and was during the year 1945, and made the survey of the line on the premises in dispute between the applicant, Julius M. Voyles, and the Georgia Marble Company, and ran the line as directed by the processioners, Mr. Oscar Anderson and Mr. Arville Wright. They gave me directions to run the line starting from the old rock corner near the old stable place at the northeast corner of the four-acre tract, and run on a 22-1/2 degree west of south, and I did that, and the processioners marked the line so run. I think it was a new line, as there were no land marks, monuments or anything that would indicate the line had been there before we ran it. I did not see any old marks, and other than the instructions of the processioners for me to run on this degree, I had nothing to guide my acts. I saw no evidence of a former line, but actually placing a new one."

Arville Wright, one of the processioners, on direct examination, testified: "I was one of the processioners in this case. We started at the old barn, by consent of the parties, and went on down toward the river. We instructed Mr. Cash, the county surveyor, to run the line on a 22-1/2 degree, and he ran according to our instructions. I saw no line marks that showed a line had been there in going through the four acres, but when we turned going toward the river there were plenty of old landmarks on adjoining lot, but I saw no marks on the lot in dispute. It seems to me like I saw marks on lot 488, I hacked through there, and there were marks, there was timber on both sides, large, small and medium. We got the idea that the line should be run on a degree of 22-1/2 west of south from the best information we had at the time, from outside information, just to start at the old barn as it is an old corner." After having testified on cross examination that "there were plenty of marks on lot 488" (the lot on which the line in dispute was located), and that the line they ran "followed the old line," and "was no new made line," the witness Wright was recalled for further direct examination and testified as follows: "In testifying awhile ago, I did not mean that we found marks on the lot in dispute, it was after we come through there, it was on the

east and west line of the adjoining lot. We did not find any marks on the lot in dispute. We didn't find any marks where we started at the barn, it was after we started through the next lot. I did not mean to tell the jury that we found any marks on the lot in dispute, that was where we went through the other."

Oscar Anderson, the other processioner who acted with Wright and the surveyor in running the line, testified on direct examination that: "I was the other processioner that participated in running this line, and the only information we had to give Mr. Cash to run on this degree of 22-1/2 west of south to find the line was from the description in the deed. We were undertaking to divide the southwest from the west, sort of compromising the thing between them fifty-fifty, and that is what we did. That is where we got the idea of 22-1/2 degrees to divide the distance of the dispute between the parties. I will not say there was any such line there before we ran it, I did not see any signs until we got across that lot of land and Mr. Voyles showed me one tree that was marked down there. I do not say there was not any marked because I was not looking. This was south of the lot the controversy was over. I didn't see any sign of any line there. There could have been one and it not marked, but I would not say. I was going with the surveyor on lot 488, and was not looking for any marks." On cross examination this witness testified further in part as follows: "I didn't notice any marked trees as we went down through there, and have never examined to see whether there are a number of marked trees on the line we ran or not. I was not paying any attention to marks, just walking along with the surveyor and the other processioner, Mr. Wright, was carrying the pole in front, and he is the one me and the surveyor were following. I didn't ask him what trees he saw or anything like that, and didn't look for them myself, I was not looking for any lines, and don't know that it was an old line, it was through the woods all the way."

T. J. Durrett testified in part as follows: "I am vice-president of the Georgia Marble Company, and attended the running of the line by the processioners in this case. After both parties had outlined their contentions as to the location of the line in dispute, the processioners retired, conferred, the two processioners present, Mr. Arville Wright and Mr. Oscar Anderson, instructed Mr. Cash, the surveyor, to set up on the agreed corner at the old stable and run

a line 22-1/2 degrees west of south, without giving any reason to the surveyor why they wanted the line run on that degree, and the surveyor acted on the instructions of the processioners and ran the line on that degree. I did not consent to the action on behalf of the marble company in no way, or that this was the true line abutting this property, but objected to their action at the time, and Mr. Anderson stated that they had done the best they could and would proceed on that basis, on that degree," and "that was a new line made by the processioners on September 24, 1945."

The applicant in the processioning proceeding, testifying in his own behalf, said that he was with the processioners when the line was run, and that he saw several marks "along there" and called their attention to them. He admitted that after he and the vice-president of the marble company, the protestant, had agreed on the starting point, the processioners themselves decided to run the line 22-1/2 degrees west of south as they testified they did. Other evidence offered by the applicant tended to show that the old line was somewhere near the line run by the processioners, but there was no direct evidence showing definitely or conclusively that the old line was run and marked anew as required by the law. Much of the evidence offered by the protestant and by the applicant was vague, uncertain and indefinite, and was self-contradictory. This court is thoroughly familiar with the rule that it is the right of the jury to settle disputed questions of fact, and that we have no power to set aside verdicts supported by the evidence, but in the confused state of the record as it comes to this court we are of the opinion that the evidence did not support the verdict in favor of the applicant, and that the case should be tried again. And, of course, this ruling is not to be construed as a holding that the evidence as contained in this record would have supported a finding in favor of the line contended for by the protestant. The court erred in overruling the motion for a new trial.

*Judgment reversed. Sutton, P. J., and Felton, J., concur.*