## 33295. PALMER v. JACKSON.

Decided December 1, 1950.

*Joseph G. Collins, C. H. Edwards,* for plaintiff in error.

*Sloan & Telford, Sidney O. Smith, B. Frank Whelchel,* contra.

Sutton, C.J. Clifford Jackson made application to the land processioners of the 862nd Militia District of White County to have the line between his land and the land of Willie Palmer in said district surveyed and marked anew, said line being described in the application as: "The line beginning at a rock corner near Willie Palmer's barn; thence west a straight line to a pine tree; thence southwest to a black gum on the original line." The processioners, together with the acting county surveyor, made a survey and a return of their acts, and a protest thereto was filed by Willie Palmer.

The processioners and surveyor, according to the return and plat, ran a line from the rock corner on the road N. 81½ degrees, W. 817 feet to a pine stump; thence S. 61½ degrees W. 535 feet to a blackjack; thence S. 54 degrees W. 743 feet to a black gum. The protestant contends that the line surveyed by the processioners and surveyer is not the correct line between his land and the land of the applicant. He alleged in his protest that the true dividing line between their lands commences at the rock corner on the road near his barn and runs 2¾ degrees south of west 526 feet to a marked pine tree, marked with a cross and three hacks; thence 10 degrees south of west along a marked line 650 feet to a marked blackjack tree; thence 35 degrees south of west 743 feet to a black gum tree. He alleged

that this has been the dividing line between these two tracts of land for seven years or more, and attached a plat of this line to his protest.

The case was tried and resulted in a verdict and judgment in favor of the applicant, Clifford Jackson. Palmer made a motion for a new trial, which was amended by adding six special grounds, the motion was overruled, and he excepted to the judgment overruling his motion.

■ No harmful error is shown by special grounds 2, 3, 4, 5 and 6 of the amended motion.

■ Special ground 2 excepts to the statement in the charge of the court that pursuant to the application "the processioners, G. B. Morris, B. L. McGee and B. G. Seabolt went out and ran the line between the property owners" and made a return, on the ground that only two of the processioners acted in making the survey. A majority of the processioners, with the county surveyor, may trace and mark anew a dividing line between adjoining landowners in a processioning proceeding. Code, § 85-1605; *Reynolds* v. *Kinsey*, 50 *Ga. App.* 385 (3) (178 S. E. 200).

■ Special ground 3 complains that the court erred in telling the jury that the original application of Jackson to have the line processioned had been introduced in evidence and that they could consider it along with the other evidence in the case. The original application is admissible in evidence along with the return of the processioners and the plat of the surveyor, and it was not error to instruct the jury that they could consider the application along with the other evidence. *Castleberry* v. *Parrish*, 135 *Ga.* 527 (3) (69 S. E. 817); *Edenfield* v. *Lanier*, 77 *Ga. App.* 535 (48 S. E. 2d, 777).

■ The charge complained of in ground 4 of the motion, that if the jury believed from the evidence that the processioners did not mark out a new line, but an old, established line, their verdict would be in favor of the applicant, was not an intimation and expression of an opinion by the court on the evidence against the movant. In the sentence next preceding the charge complained of the court had instructed the jury that if they believed from the evidence that the processioners had marked out or made a new line, their finding would be in favor of the protestant.

■ Where, during the trial, the testimony of a witness was

disallowed, it was not error for the court, at the conclusion of the evidence by both parties, to admit the testimony so ruled out without having it read to the jury, as contended in special ground 5 of the motion.

■ It was not error to admit the testimony of Mrs. Clifford Jackson as complained of in ground 6 of the motion.

■ The processioners testified to the effect that they undertook to run the line between Jackson and Palmer, and the dispute was whether a stump or a marked pine tree was the line. Jackson pointed out to them three pine stumps on the hill within a radius of 10 to 15 feet from each other and claimed the line ran west from the rock corner on the road near Palmer's barn to one of the stumps, and Palmer claimed the line ran from the undisputed rock corner on the road to a marked pine tree on the hill or ridge. The surveyor ran a line from the rock corner west and went between the stump and the marked pine, and the processioners undertook to set up a compromise line the first time but made no return of that survey. One of the processioners testified, "This here marked pine marked here (indicating) was only 30 feet off of a due-west line. I saw the mark on the pine. That did not indicate anything to me, we were hunting for the line. We were undertaking to run it from some deeds and we couldn't make the deeds close; one went this way north and one went this way south and we never did set this up as a line. We run around here and couldn't do anything with it, and we decided the distance from this pine to this other pine (indicating) and run a line and we tried to get a compromise on it and we didn't do any good at that. That line we tried to set up was a new line."

Two of the processioners and surveyor went back at a later date and this same processioner testified: "Mr. Luther Jackson said he and Mr. John Brown divided it. He said they started at the rock and went up the ridge and we had the surveyor start at the rock and make a straight line to that stump up there and we set that up as the line. 'Q. Did you find any evidence of a line ever being there? A. Not a bit. Q. You were setting up absolutely a new line? A. Well, I don't know whether we did or not—that was what we were told. Q. So far as you know, you set up a new line? A. It was new to

us, yeah.' We did not know we were setting up a new line when we were doing it; we thought we were hunting the old line and we thought we were going on the old line by what evidence we could get from Mr. Jackson." The processioners testified that they found no physical evidence of any kind of any line from the rock corner on the road to the pine stump on the hill and from the pine stump to the marked blackjack.

It appears from the evidence that Floyd Brown formerly owned the two tracts of land now owned by the applicant and the protestant. He placed this tract of land, containing approximately 125 acres, in the hands of a real-estate agent to sell, and, at the instance of the agent, W. L. (Luther) Jackson and John Brown undertook to divide the tract of land into two equal parts by walking over the land and without making a survey. According to the testimony of Luther Jackson, he and John Brown put up a rock corner at the road, which is now not in dispute, and they walked from there to three large pines on the hill and marked one of them with three hacks on the east side and three hacks on the south side, and from there to a blackjack tree, which they marked, and from there to a black gum. "We had no instruments. We walked it and divided it; we aimed for it to be a straight line from that rock to the pine on the hill [and] to the black gum." This witness testified that the three pines on the hill were from 12 to 15 feet apart, within a radius of that, and he did not remember and could not tell from the stumps which tree had been marked; that he was with the processioners and surveyor when they ran the line between Clifford Jackson and Willie Palmer and they ran from the rock on the road to one of the pine stumps on the hill; that the stump was not marked and he was not sure which was the right stump, but they went to the one most beneficial to Palmer; that there was no marked line from the rock on the road to the pine stump and nothing to indicate where the line was along there; that he knew the pine tree, marked with a cross and three hacks, which is claimed by Willie Palmer as the line, and it has been marked for several years, but it is not the pine tree that was marked by him and John Brown.

Willie Palmer, the protestant, testified that he was familiar with the line running from the rock corner on the road near his

barn to the marked pine tree on the hill, and thence from the pine to the marked blackjack and on to the black gum; that he had known the line for about eight years; that it was pointed out to him by Luther Jackson, who told him he could cut timber to that line, and John Brown also showed him this line. Luther Jackson denied that he had pointed out the line to Willie Palmer. Watt Gerrin testified that he formerly resided on the place now owned by Willie Palmer and cultivated it for two years, 1938 to 1940, and that Clifford Jackson showed him the line which is now in dispute between Jackson and Palmer as running from the rock on the road to the marked pine tree now standing on the hill, and then on to the blackjack, and then to the black gum; that Jackson went with him and pointed this line out to him as the dividing line between the two tracts of land. This was denied by Clifford Jackson.

Luther Palmer testified that he formerly owned the land now owned by Willie Palmer, that he bought it in 1941 and is familiar with the line that runs from the rock on the road to the marked pine tree, thence from the pine tree along a marked line to the blackjack, and thence on to the black gum tree; that the marks on the pine tree were old marks; that there were other marked trees along the line from the pine to the blackjack and on to the black gum; and that several oaks and hickories along this line were marked.

The deed from F. L. Brown to Willie Palmer and the deed from F. L. Brown to W. L. Jackson and the deed from W. L. Jackson to Clifford Jackson were introduced in evidence, but no bearings or distances are called for in the description of the land in these deeds, except such general calls as "thence south to a black gum tree; thence northeast to a pine tree; thence east to a rock corner," in the Palmer deed, and "thence north to a rock corner; thence west to a pine tree; thence southwest to a black gum on the original line," in the Jackson deeds. F. L. (Floyd) Brown, the grantor in the Palmer and Jackson deeds, testified that he knew where the rock corner on the road was, but he was not familiar with and did not know the location of the line between the Palmer and Jackson tracts of land. There was some other evidence, but it is not necessary to refer to it in detail here.

Under the law of processioning, it is the duty of the proces-

sioners, together with the county surveyor, to retrace and mark anew established lines, not to run new lines. They have no authority under the law to run and set up a line where they think it ought to be, but where in fact no line existed or had been established before their survey. *Aderhold* v. *Lambert*, 67 *Ga. App.* 166 (19 S. E. 2d, 538); *Smith* v. *Clemons*, 71 *Ga. App.* 589 (31 S. E. 2d, 621); *Georgia Marble Co.* v. *Voyles*, 74 *Ga. App.* 312 (2) (39 S. E. 2d, 488); *Bostick* v. *Yaughn*, 79 *Ga. App.* 180 (53 S. E. 2d, 223); Code, §§ 85-1605, 85-1606.

The processioners and surveyor in the present case ran a line from the rock corner on the road near Palmer's barn N. 81½ degrees W. 817 feet to a pine stump on the hill. This line had never been surveyed before. The processioners testified that they did not know whether it was a new or an old line; that there was no physical evidence to indicate that it was the true dividing line between the lands of the applicant and the protestant at this place; that the pine stump was one of three stumps, within a radius of 10 to 15 feet of each other, pointed out to them by W. L. Jackson, who stated to them that he could not say which one of the stumps was on the line. Jackson testified that he and John Brown in dividing the 125-acre tract of land walked from the rock corner on the road to a large pine tree on the hill and marked it, but he could not say whether the stump to which the processioners ran the line was the same as the pine tree they marked. The deed calls for a line running west from the rock corner on the road to a marked pine tree. Jackson in his petition to have the line processioned described it as beginning at a rock corner on the road and running thence west in a straight line to a pine tree, thence southwest to a black gum. Palmer contends the line runs from the rock on the road to a marked pine tree still standing on the hill; thence along a marked line from the pine to a blackjack; and thence to the black gum. There is other evidence in the record tending to support his contention. The surveyor ran a line west from the rock corner on the road and went between the marked pine tree, claimed by Palmer as being on the line, and the pine stump to which the processioners ran. The distance between the pine stump and the marked pine tree is about 250 feet.

According to the evidence, we think it was a guess on the part

of the processioners in selecting the pine stump as a point or corner to run the line from the rock on the road. This conclusion is reached from a consideration of the evidence, and especially from the evidence of the two processioners and W. L. Jackson who testified that they did not know and could not say whether the pine stump was on the line in question.

The verdict in favor of the applicant, sustaining the line set up in the return of the processioners, is unauthorized under the law and the evidence, and the trial judge erred in overruling the protestant's motion for a new trial on the general grounds, and on special ground 1 of the motion, that the processioners established a new line, instead of running and marking anew the old line between the lands of the applicant and the protestant.

*Judgment reversed. Felton and Worrill, JJ., concur.*