## 34868. GREENWAY *v.* ALTMAN.

Decided January 23, 1954.

*Barrie L. Jones,* for plaintiff in error.

*J. H. Highsmith,* contra.

NICHOLS, J. W. R. Greenway made a written application to the Land Processioners of the 1730th District, G. M., of Bacon County, to have the south line of a 200-acre tract of land surveyed and marked anew, it being alleged in the application that T. D. Altman was one of the adjoining landowners to the line Greenway sought to have processioned. After due notice, a survey and return were made by the processioners and county

surveyor, and a protest was filed thereto by T. D. Altman. The case proceeded to trial and resulted in a directed verdict in favor of the line as claimed by the protestant. The applicant's motion for a new trial as amended was denied, and he excepted.

It appears from the record that Greenway owned the south portion of lot number 152 in the 2nd Land District of Bacon County, having acquired the same in 1934; that Altman had owned the northern portion of lot number 125 in said district continuously since 1933, and that said tracts of land adjoined each other, Altman's tract being located just south of Greenway's land. The return of the processioners states that the plat attached thereto, which was made and certified to by the county surveyor, correctly represents the line and its location as marked out by them on December 13, 1952. This plat shows a straight line, designated as "Original Land Lot Line," running from an iron stake designated as "Original Land Lot Corner and Point of Beginning," north 89 degrees east to an iron stake designated as being in Satilla Creek. The certificate of the surveyor on the plat is as follows: "I hereby certify that I surveyed and marked anew the south line of lands of W. R. Greenway, same being the original south lot line of lot number 152, the 2nd land district of Bacon County, Georgia. This 13 December 1952. /s/ Ralph Spivey. Surveyor of Bacon County, Ga."

Altman in his protest objected to the return of the processioners and the plat attached, on the grounds that the line as run by the processioners is not the correct dividing line between the lands of Greenway and Altman, and that the processioners did not mark anew the dividing line between said lands, but marked out an entirely new line between said lands. He alleges in his protest as amended: that he purchased and went into possession of his tract of land in October, 1933; that he had been living on it and cultivating a portion of it continuously since that time, and had been working the timber thereon for turpentine purposes since he acquired the land; that, for a period of 30 years, the northwest corner of lot number 125 (this being the corner between his lot and lot number 152) has been recognized as being at a point on the west side of a lane and approximately 12 feet south of the southeast fence corner of what is known as the J. R. Varnadore field, said point now being marked by a railroad iron driven into

the ground, and for the same period of time the northeast corner of his lot, number 125, has been recognized as being located at the south end of Blue Lake on Satilla Creek, where the run of said creek intersects with a slew leading out of said lake southward, this corner being marked by an iron stake. He then describes the line as running along a fence between his and Greenway's land, which, he alleges, has been recognized as the dividing line by the owners for 20 years, and alleges that said line extends from the east corner of said fence in a straight line eastward to the iron stake in Blue Lake; that said line has been recognized by said parties as the dividing line between their lands during the time that said lands have been owned by them; that he has continuously worked the trees for turpentine purposes on his land up to said described line, and has cut timber on his land; and that said Greenway has, during the last 17 years, acquiesced in said line, by cultivating his land down to said fence and by working the timber for turpentine purposes on his side down to said line during said period of time.

Ralph Spivey, the county surveyor, as a witness for the applicant testified to the effect that he, together with the processioners, surveyed a line starting at an iron stake at the northwest corner of lot 125 and the southwest corner of lot 152; that he set his compass at north 89 degrees east and ran to the creek, where Mr. Varnadore and Mr. Holton said a corner had been for more than 30 years, but that he did not see that corner; that the processioners put stakes down along the line that he ran, that he was trying to find the original lot corner and line but was sure that he did not; that he started at a place where they said the southwest corner of lot 152 was, but that there was nothing there to indicate that it was an original lot corner; that the line that he established was an imaginary line according to the compass, beginning at a point where somebody told him the lot corner was, but that there was nothing on the ground to indicate that a line was there; that he was going by the compass, which was the way he made the plat; that the line they ran went through Mr. Altman's new wire fence; that he and the processioners were trying to find what was supposed to be the lot line between those two land lots; that he went by his compass entirely, and working the timber or possession did not matter to

them, as they were trying to find what was supposed to be the lot line; and that he did not know, except by the compass, whether the line he ran was the lot line or not.

Tom Holton testified to the effect that he was familiar with the land lines there and was present when the processioners ran the line between the property of W. R. Greenway and T. D. Altman, and that the line as run by the surveyor and processioners was the line he had recognized as the dividing line for 30 years. The processioning proceeding was introduced in evidence by the applicant.

W. R. Greenway, who was called as a witness by the protestant for the purpose of cross-examination, testified that he bought his land in November, 1934, the same being bounded on the east by Satilla Creek and on the south by the lands of T. D. Altman; that about two years after he bought his land, and about 16 years ago, he leased his timber to Walter Holton, who put up turpentine cups approximately where the original line ran; that Holton came to him and told him that Mr. Altman objected to his cupping that timber; that he told Holton that he would leave it up to him and Altman, referring to the dispute or question about the line; that Altman then put up cups along where his lessee, Holton, had put them, and from that time for a period of about 16 years Altman had worked the timber on his land for turpentine purposes up to the line claimed by Altman; that he (Greenway) had worked the timber for turpentine purposes on his side up to the line claimed by Altman for the same period of time; that he got wood and posts off the disputed land, but that he had just been there for two years and hated to come into a community and get into a lawsuit, so he just let Altman work the timber up to the line Altman claimed, and he has continued to do that.

The movant, Greenway, contends in the amended motion for a new trial that the court erred in directing a verdict for the protestant because: (1) there was evidence from which the jury could have reached a different verdict from the one directed; (2) it was a question of fact for the jury as to whether Greenway has acquiesced in the line claimed by the protestant; and (3) the evidence as a whole did not demand a finding that Greenway had acquiesced in or agreed to the line claimed by Altman. These grounds will be considered together.

It is the province and duty of the processioners and surveyor in a processioning proceeding to run and mark anew a line or lines as they actually exist. They have no authority under the law to mark new lines. *Bostick* v. *Yaughn,* 79 *Ga. App.* 180 (53 S. E. 2d 223); *Hall* v. *Browning,* 71 *Ga. App.* 694 (32 S. E. 2d 126); *Aderhold* v. *Lambert,* 67 *Ga. App.* 166 (19 S. E. 2d 538); Code § 85-1601 et seq. Under the law and the evidence, a finding setting up the line as run by the surveyor and processioners would not have been authorized in this case. But in a case where the evidence in favor of the protestant is specific and sufficiently definite to establish a dividing line between the lands of the parties, then the line as defined in the protest, if supported by sufficient evidence, may be set up and established as the true dividing line in such proceeding. *Hall* v. *Browning,* 71 *Ga. App.* 694, supra.

The controlling question in this case is whether the protestant and applicant acquiesced in the line claimed by the protestant, for as much as 7 years and in a manner meeting the requirements of law for establishing a dividing line. Code § 85-1602 provides: "Acquiescence for seven years, by acts or declarations of adjoining landowners, shall establish a dividing line." " 'Under the Code, acquiescence in a dividing line for a period of seven years or more will operate to establish the line, without regard to any previous parol agreement between the parties as to the line.' [Citations.]" *Brown* v. *Hester,* 169 *Ga.* 410 (2) (150 S. E. 556); *Williamson* v. *Prather,* 188 *Ga.* 545 (1) (4 S. E. 2d 140). To establish a line by acquiescence, it must appear that the owners of the property to be affected thereby either acted in such a manner or made such declarations for a period of seven years as to show that the line claimed was the true line between their lands. Actual possession by adjoining landowners up to the line may show acquiescence in the line, but such actual possession is not indispensable to show acquiescence. *Tietjen* v. *Dobson,* 170 *Ga.* 123 (3) (152 S. E. 222, 69 A. L. R. 1408). A dividing line between adjoining landowners may be established where actual possession has been had under a claim of right for more than seven years (Code § 85-1603), but such actual possession is not necessary to establish a line by acquiescence, as is above stated.

Greenway testified that, about two years after he purchased his land in 1934, he leased the timber on it for turpentine purposes, and that a dispute arose at that time between him, or his lessee, and Altman as to the dividing line between their lands, the line now in question. Greenway testified that he told his lessee that he would leave it up to him and Altman, from which time, some 16 years ago, Altman has worked the timber for turpentine purposes on his land up to the line claimed by him, and Greenway has worked the timber for turpentine purposes on his side up to the line claimed by Altman for the same period, and it has continued that way. Greenway further testified that he got wood and posts off of the disputed land, but he did not say when he did this or for how long, or that Altman had knowledge of this.

Under the testimony of the applicant, Greenway, a finding was demanded that the parties to this proceeding had by their acts and conduct acquiesced for more than seven years in the line as claimed by the protestant, Altman; and the court did not err in directing a verdict for the protestant, setting up that line.

*Judgment affirmed. Felton, C. J., and Quillian, J., concur.*