34777. HACKLE *v.* BOWEN.

Decided March 18, 1954.

W. G. & Wm. J. Neville, George H. Lane, for plaintiff in error.
Anderson & Trapnell, contra.

QUILLIAN, J. On October 13, 1951, the defendant in error, Barney L. Bowen, applied to the processioners of 1685th District of Georgia Militia, Candler County, to survey and mark anew the lines around his tract of land 'lying in the said county and partially in the said militia district. On November 23, 1951, the processioners made a return to the Ordinary of Candler County, attaching thereto a plat of the survey, said return reciting that the processioners together with the surveyor did, on October 24, 1951, survey and mark anew the lines around the applicant's land as required by law. The applicant, being dissatisfied with the survey filed a protest to the return of the processioners, and Claude L. Hackle, one of the adjoining landowners, likewise being dissatisfied, also filed a protest to the return. The case thus made was transmitted to the superior court for a trial before a jury as required by law. Pending the trial, the protestant, Hackle, made a motion to dismiss the return of the processioners, which motion was overruled, and he excepted pendente lite. The jury returned a verdict in favor of the applicant, and Hackle made a motion for new trial on the general grounds, which he amended by adding six special grounds. The trial court denied the motion, and the plaintiff in error assigns error on that ruling and on his exceptions pendente lite.

It appears from the record that the land of the applicant, Barney L. Bowen, consists of 490.62 acres, bounded on the north by the lands of Claude L. Hackle, and on the east by lands of

Hackle and H. K. Hadden. Two portions of the line between the lands of the applicant and of the protestant are in dispute. The north line between the lands of these parties as run by the processioners commences on the west at a gum stump on the edge of "Bowen's Pond," and runs south 76½ degrees east, 64.40 chains. The straight line thus run crosses "15 Mile Creek," and runs an unspecified distance to the east thereof. The line run by the processioners then continues in six segments, in a curving course, south and east and thence west, and returns to the said 15 Mile Creek at a black gum tree, some considerable distance south of the point where the aforementioned straight north line crosses the said 15 Mile Creek, and the line then continues in a southerly direction following the run of the said 15 Mile Creek. The line thus run encloses a considerable portion of land to the east of the said 15 Mile Creek, on the northeast corner of the applicant's land. It is the contention of the protestant, Hackle, that the straight north line designated as beginning at the gum stump on the edge of "Bowen's Pond" and running south 76½ degrees east, 64.40 chains ends on the east at the run of 15 Mile Creek, and that the line between his property and Bowen's then follows the run of the 15 Mile Creek in a southerly course, the line not enclosing any land to the east of 15 Mile Creek.

The western end of the aforementioned straight north line is shown by the plat and the evidence to have been extended westwardly by the processioners 270 feet into a mill pond lying largely on Bowen's land and known as Bowen's Pond, and the line as run by the processioners then follows the thread of Mill Branch in a northerly direction for an unspecified distance to the head of Bowen's Pond. The line as thus run by the processioners and platted by the surveyor gives to Hackle a portion of the land on which Bowen's Pond lies. It is the contention of Bowen, the applicant, in his protest, that the true line between his lands and those of Hackle runs from the gum stump on the edge of Bowen's Pond in a northerly direction following the high water line of the said pond to the head of the pond.

On the trial of the case, the three processioners and the surveyor testified that so much of the line as was run westward 270 feet into the pond and from that point northward to the head of the pond was not actually run or surveyed and marked

anew by them, but that the plat was drawn showing such line on the basis of information showing such location of the line contained in old deeds and plats.

Based on such testimony, the protestant made a motion to dismiss the return of the processioners on the ground that such line "was not actually traced and marked by said processioners, or a majority of them, with said surveyor, and said return together with the plat thereto attached is therefore void and without legal effect." The trial court denied that motion, and the protestant assigns error here on exceptions pendente lite. In support of his contention in this regard the plaintiff in error cites *Reynolds* v. *Kinsey*, 50 *Ga. App.* 385, 386 (3) (178 S. E. 200), and *Amos* v. *Parker*, 88 *Ga.* 754 (16 S. E. 200). Neither of these cases sustains the plaintiff in error's position. In the *Amos* case it appeared that the processioners met and merely decided where the line was to be run and that the applicant was "entitled to 30 acres of land in the northwest corner of said lot." They did not run any line or re-mark any line, and under such circumstances their return was a mere nullity, and it was so held by the Supreme court. The *Reynolds* case merely stated but did not apply the principle that, in order to give the superior court jurisdiction to try a protest to a return of processioners, it is necessary that the processioners, or a majority of them, shall have actually traced and marked the disputed boundary lines. This case cites as authority for this proposition section 3818 of the Code of 1910 (now Code § 85-1605) and the *Amos* case. That section is not authority for the position taken by the plaintiff in error, and, as we have shown above, neither is that case. The plaintiff in error does not cite any authority, and none has been found which sustains his contention.

We do not think that the contention is sustained in principle by reason and logic, either. The evidence shows that the processioners ran and marked anew, not only the disputed lines between the applicant and the protestant, but all the other lines around the applicant's land. Nothing in the chapter of the Code on processioning makes any requirement respecting the placing of line or corner markers or requires that such markers be placed on any particular interval or spacing and nothing in the law as it presently exists requires that every foot or inch of a line be

drawn on the face or surface of the earth, or that the processioners or a majority of them actually walk over or along the entire line without omitting any interval in so doing. All that is required of the processioners and the surveyor is that the lines be traced and marked anew so as to locate the lines with some definiteness.

One portion of the line questioned by this motion is an extension westward by 270 feet of a straight line running 64.40 chains, said extension to be to the thread or channel of Mill Branch, and the other portion to follow the thread or run of Mill Branch from the point where intersected by the extension of the straight line northward to the head of the pond. The locations of those portions of the line were sufficiently shown to enable any future surveyor or processioners to locate exactly the lines run. The fact that the processioners may have used an erroneous or illegal or improper method in ascertaining the location of the line would not subject their return to dismissal, but would merely authorize a jury finding against the line as run. The return of the processioners was prima facie legal and proper, and the trial court did. not err in refusing to dismiss the return for any reason advanced by the motion.

■ Special ground 1 seeks a new trial on the ground of newly discovered evidence. This ground is to the effect that the witness, whose testimony was to be used as the basis of the newly discovered evidence, would testify that he had fished in Bowen's Pond at a time when Hubert Watson, the applicant's predecessor in title, was its owner, and that Watson told the witness that Mrs. Anna Lora Bowen, the protestant's predecessor in title, had an interest in the pond, and that the witness should give her some of the fish caught. There was much evidence, both pro and con, tending to show or to refute the fact that Mrs. Bowen had or claimed an interest in a portion of the pond, and the evidence sought by this ground to be made the basis of a new trial because of newly discovered evidence was not only cumulative but impeaching in character, and in view of other evidence in the case was not such as would authorize the grant of a new trial on the ground of newly discovered evidence.

■ The court charged the jury: "Gentlemen, the processioners, I stated to you a few minutes ago, made a return of what they

considered the true lines and anyone attacking that return of processioners would have the burden of proving that that line was not the true line, that is ordinarily the case, it is seldom that we have two protests filed to a processioners' return, but in this case it developed in the trial that the processioners under their testimony that they did not mark anew the dividing line between the coterminous landowners, but because they had some difficulty in ascertaining what the true line was they took a little from one and gave to the other on one end and took a little from the other and gave to the other on the other end, in other words, they tried to do equity by the parties, and that, gentlemen, is not the duty of processioners, consequently the court directs that the line as drawn by the processioners is not the true line, it may be the true line, but the way they arrived at it was not the way to arrive at it, taking from one and giving to the other and then taking from the other and trying to equal things up."

In special ground 2, error is assigned on this portion of the charge because it expressed an opinion as to what had been proven in the case, and because it had the effect of taking from the jury the right and opportunity of saying whether the line as run by the processioners was the true line; and in special ground 3 the portion beginning with the words, "it is seldom," etc., is alleged to have been erroneous and not sound as an abstract principle of law.

One of the processioners testified: "We started our survey to trace this line at this gum stump and went east with it, that is right, we did not run that line from the gum stump into the pond, no we did not run it up here to the head of the pond, we were about to run out of time, it was near the time when we had to make our report and we came back here and someone suggested, I don't know who it was, to run this line up here around the pond, and we got to checking it with some more records that morning and got more or less confused and someone suggested that since we give this to Barney over here that we give this according to the plat without going back and making any more checking, it wasn't according to this plat though. Well we didn't run this line through there all the way because we figured that if we gave that to him it would run according to his plat, according to this plat. I don't know how that 4.0 came about, I

don't know about that. We did not run that line from the gum stump into the pond, we didn't do anything after we got to the gum stump." This testimony was nowhere controverted. A fair interpretation of this evidence is that the processioners did consider that they took from the protestant Hackle over on the east of 15 Mile Creek and, by way of compromise, decided to give him the portion of Bowen's Pond cut off by extending the straight line into the pond to the run line of Mill Branch and following the run of Mill Branch to the head of the pond, rather than by running the line from the gum stump along the high-water mark to the head of the pond, as contended by Bowen. "It is the duty of the processioners, together with the county surveyor, to retrace and mark anew established lines, not to run new lines. They have no authority under the law to run and set up a line where they think it ought to be, but where in fact no line existed or had been established before their survey." *Palmer* v. *Jackson*, 82 *Ga. App.* 702, 706 (62 S. E. 2d 366) ; *Reynolds* v. *Kinsey*, 50 *Ga. App.* 385, 387 (4) (178 S. E. 200). Under this rule of law, a line established merely by compromise or by taking from one in one place and giving to the other, and by taking from the other in another place and giving to the first, is not shown to be the true line. As charged by the trial judge in the portion excepted to, it may be the true line (accidentally or by chance), but that is not the way to arrive at the true line. Since the evidence that this is what the processioners did was uncontradicted and undisputed, it was not error for the judge in his instructions to the jury to assume or state such fact. *McCloud* v. *State*, 166 *Ga.* 436 (3), 444 (143 S. E. 558) ; *Morton* v. *State*, 190 *Ga.* 792, 801 (4) (10 S. E. 2d 836) ; *Pate* v. *Carrollton Clinic*, 52 *Ga. App.* 774 (2) (184 S. E. 780) ; *Snellings* v. *Rickey*, 57 *Ga. App.* 836, 838 (2) (197 S. E. 44) ; *Caraway* v. *State*, 72 *Ga. App.* 504 (2a) (34 S. E. 2d 303). Special grounds 2 and 3 show no error.

■ Special ground 4 complains of a recharge given by the court. The jury came back into the courtroom and requested instructions in regard to the effect of recording a plat. The court then gave the following instruction: "The probative value of the plat, Mr. Foreman, is for the jury, your consideration. Ordinarily the recording of a plat or deed is to put everybody on notice of the claim at the time of the recording of the plat, that's

what the recording means, if a person is on notice without the recording you don't have to record it, but when a plat or deed is recorded in the clerk's office that is constructive notice to everybody." This ground does not show error for any of the reasons assigned. The instructions of the trial judge, complained of in this ground of the motion, with respect to the effect of the recording of such plats, while correct, were not required to be given at all under the law and issues in this case. The rules to be followed by processioners in ascertaining the location of disputed land lines and by juries in the trial of processioning cases are set forth by the Code, §§ 85-1601, 85-1602, and 85-1603. As will be seen by a reading of these Code sections, a plat is material to the issues in the case only so far as it tends to show the location of the disputed land lines, and whether it has been recorded or not is not material at all to such issues. The assignment of error here cannot be the basis for a new trial.

■ Special ground 5 complains because the trial court refused to exclude testimony of the applicant—to the effect that at the time he joined with other heirs at law of a predecessor in title to the protestant's lands in executing a deed to the grantor of the protestant, which deed recited the existence of a recorded plat of the property upon which the protestant sought to rely in the trial of the issues of this case—that he (the applicant) did not know of the existence of such plat. Special ground 6 complains because the court permitted the applicant to testify over the protestant's objections that the deed referred to in the 5th special ground—in which the applicant joined with other heirs of M. J. Bowen, Sr., in conveying their interest in the said lands to the said M. J. Bowen, Sr.'s, widow—did not contain a complete description of the property conveyed thereby, which property was, of course, subsequently conveyed to the protestant and adjoins the property now owned by the applicant, the lines around which the processioners sought to survey and mark anew. It is contended that this evidence contradicted and varied the terms of a valid written description contained in the warranty deed mentioned, to which the applicant was a party.

These grounds of the motion do not show error. As we have pointed out in the preceding division of this opinion, a deed and plat are only incidentally relevant in a processioning proceeding.

The applicant can admit knowledge of the existence of the plat in question, at the time when he executed the deed in question in 1937, and still prevail in the processioning proceeding, for he may show subsequent or prior and continued acquiescence or agreement in a line different from that called for by the plat; and if the jury believes him, and fixes the line in accordance with his contentions, the evidence of the plat is thereby overruled. The testimony complained of in this ground, however, was not a contradiction of the recitals in the deed, but merely an explanation by the applicant of the circumstances under which the deed was executed by him; and it was permissible for the applicant to make such an explanation on the trial of a processioning case where no question of title was involved, but only the question of the location of the land lines was before the court. The trial judge did not err in refusing to exclude the evidence complained of in the 5th and 6th special grounds.

■ The evidence, while not demanding it, supported the verdict in favor of the applicant. As to the portion of the disputed line to the east of 15 Mile Creek, the evidence showed that this line was formed when the grandfather of the applicant, who owned at that time what are now both the applicant's and the protestant's lands, sold a part of his land. J. R. Bowen testified that he was personally present and assisted in running the lines about the property of M. J. Bowen (applicant's grandfather), and that up to that time the line between what M. J. Bowen sold and what he retained had never been run, and that he recalled that they ran up 15 Mile Creek and then cut east across the swamp to the sand ridge and then followed around the edge of the sand ridge, and then ran to the pond, and around the edge of the pond. This evidence was substantiated by several other witnesses in one manner or another; and while the evidence showing that the line thus laid off was the same as the one found by the processioners and sustained by the jury was slight, it was sufficient when taken in connection with the testimony of some of the processioners and of the surveyor, to the effect that they found some physical evidence of the location of the old line to the east of 15 Mile Creek.

As to the disputed line on the west in connection with the pond, it is sufficient to say that Hubert Watson testified that,

when he had title to and was in possession of the land now owned by Bowen, M. J. Bowen, who was then owner of Hackle's place, admitted that the line on the west was the high-water mark of the pond, and that this line was acquiesced in by himself and M. J. Bowen for several years, while they both were in possession of the respective tracts. In addition to that evidence, the testimony of J. R. Bowen respecting the original running and marking of the line, above referred to, was itself sufficient to authorize the jury to find that the line was along the edge of the pond, as contended by Bowen.

Such evidence, therefore, was sufficient to authorize the verdict in favor of Bowen, and the trial court did not err in denying the protestant's motion for a new trial on the general grounds and on all of the special grounds.

*Judgment affirmed. Felton, C. J., and Nichols, J., concur.*